# In the United States District Court
# for the Southern District of Georgia
# Savannah Division

FILED
Scott L. Poff, Clerk
United States District Court

By cashell at 4:33 pm, May 16, 2017

RICHARD BYRD and AMANDA
BYRD,

     Plaintiffs,

     v.

DRIVE ELECTRIC, LLC; DRIVE
ELECTRIC USA, LLC; ZONE
ELECTRIC CAR USA, LLC;
WESTERN GOLF CAR SALES CO.,
INC.; WESTERN GOLF CAR
MANUFACTURING, INC.; LIDO
MOTORS USA, INC.; and
SUZHOU EAGLE ELECTRIC
VEHICLE MANUFACTURING CO.,
LTD.;

     Defendants.

4:15-CV-120

## ORDER

Plaintiffs Richard and Amanda Byrd move for entry of default judgment against Defendants Drive Electric, LLC and Drive Electric USA, LLC (collectively, "Drive Electric"); Zone Electric Car USA, LLC ("Zone Electric"); and Western Golf Car Sales Co., Inc.; Western Golf Car Manufacturing, Inc.; and Lido Motors USA, Inc.[1] (collectively, "Western/Lido") (all together, "Defendants"). Dkt. No. 52. The Motion will be **GRANTED**.

---

[1] Suzhou Eagle Electric Vehicle Manufacturing Co., Ltd. is excluded from this Order. See Dkt. No. 52-1 at 2 n.1.

## BACKGROUND

The Court deems the Byrds' well-pled factual allegations admitted by Defendants' default. See United States v. Elliott, No. 1:15-CV-106, 2016 WL 4083738, at *1 (S.D. Ga. Aug. 1, 2016). The Byrds are a married couple who lived in Savannah, Georgia. Dkt. No. 1 ¶ 1.[2] Around December 22, 2009, they bought a Neighborhood Electrical Vehicle ("NEV") sold, designed, assembled, inspected, and manufactured by, and equipped with components from, Defendants. Id. ¶¶ 13-14. The NEV's electrical-power junction, through which energy passed to charge the NEV, was too small. Id. ¶¶ 15-16. This caused a May 9, 2011 electrical fire that destroyed the NEV and the Byrds' SUV, and spread into their home. Id. ¶ 17.

The Byrds filed this lawsuit on May 6, 2015. See generally id. Service of process was perfected on November 4, 2015. Dkt. Nos. 14-16, 18-19, 38-39. Defendants did not answer, and the Clerk entered defaults on August 9 and October 11, 2016. Dkt. Nos. 44, 50. The Byrds moved for entry of default judgment on December 6, 2016. Dkt. No. 52. The Court heard oral argument on March 24, 2017; Defendants did not appear or respond. See Dkt. No. 68. The Byrds timely supplemented their briefing on April 7, 2017. Dkt. No. 70.

---

[2] The Court cites to the original complaint for all facts unfavorable to Defendants, as these are what they admitted to through their default and none materially differ in the amended complaint.

**LEGAL STANDARD**

Given an adequate basis in the pleadings, the Court has discretion to enter default judgment. Fed. R. Civ. P. 55(b); United States v. Elliott, No. 1:15-CV-106, 2016 WL 4083738, at *1 (S.D. Ga. Aug. 1, 2016); Am. Contractors Indemnity Co. v. Energy Smart Insulation Co., No. 6:15-CV-66, 2016 WL 3395546, at *1 (S.D. Ga. June 15, 2016) (citing Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).

**DISCUSSION**

The Byrds are entitled to entry of default judgment because Defendants are in default, the Court has jurisdiction, there is an adequate basis for finding liability, and the Byrds adequately proved damages.

**I. DEFENDANTS ARE IN DEFAULT.**

Defendants are in default. Dkt. Nos. 44, 50. This is so even though the Byrds filed an amended complaint after entry of default, as they "did not assert any new claims." Saint-Gobain Autover USA, Inc. v. Fuyao Glass Indus. Grp. Co., No. 05-71079, 2005 WL 3454402, at *1 (E.D. Mich. Dec. 16, 2005) (finding no obligation to serve amended complaint on defaulting defendant); see also Varnes v. Loc. 91, Glass Bottle Blowers Ass'n of U.S. & Can., 674 F.2d 1365, 1369 (11th Cir. 1982).

AO 72A
(Rev. 8/82)

## II. THE COURT HAS JURISDICTION.

The Court has jurisdiction. It has diversity subject matter jurisdiction. The Byrds were Arkansas residents when they filed this lawsuit, Defendants were not, and the amount in controversy exceeds $75,000. Dkt. No. 1 ¶¶ 1-8, 10.

The Court also has personal jurisdiction over each Defendant compliant with Georgia's long-arm statute and federal constitutional due process. The plaintiff bears the burden of proving that both requirements are satisfied. See, e.g., RMS Titanic, Inc. v. Kingsmen Creatives, Ltd., 579 F. App'x 779, 783 (11th Cir. 2014) (per curiam). The Byrds have carried that burden here.

### A. Personal Jurisdiction Satisfies Georgia Law.

Personal jurisdiction over Drive Electric, Zone Electric, and Western/Lido satisfies the Georgia long-arm statute.

#### i. The Court has long-arm jurisdiction over Drive Electric.

Georgia's long-arm statute gives the Court jurisdiction over Drive Electric. That law extends "personal jurisdiction over any nonresident who transacts any business in this State." Innovative Clinical & Consulting Serv., LLC v. First Nat'l Bank of Ames, 620 S.E.2d 352, 355 (Ga. 2005) (citing O.C.G.A. § 9-10-91(1)). The nonresident need not physically enter Georgia. Diamond Crystal Brands, Inc. v. Food Movers

*Int'l, Inc.*, 593 F.3d 1249, 1264 (11th Cir. 2010) (discussing "a nonresident's mail, telephone calls, and other 'intangible' acts"). Drive Electric came within reach of the long-arm statute by selling the Byrds an NEV through its website and shipping it to them in Georgia. *See* Dkt. No. 49 at 1-2, 3 ¶ 1.

### ii. The Court has long-arm jurisdiction over Zone Electric.

Zone Electric also comes within reach of Georgia's long-arm statute. The Byrds evidenced that Zone Electric made their NEV to order, and that Zone Electric transferred ownership of the as-yet-unmanufactured NEV to Drive Electric as soon as they placed their order. Dkt. Nos. 70-2, 70-3. This is enough to satisfy Georgia's long-arm statute, as is clear from two cases.[3] In *Vibratech, Inc. v. Frost*, 661 S.E.2d 185, 187 (Ga. Ct. App. 2008), the New York defendant manufactured an allegedly defective part of an airplane engine. The part was shipped to an Alabama company, which installed the part into the engine. *Id.* The plaintiffs bought the engine from a Texas company. *Id.* The Texas company had the Alabama company ship the part to the

---

[3] These cases establish that Zone Electric is subject to long-arm jurisdiction because it both "[t]ransact[ed] any business within" Georgia, and "[c]ommit[ted] a tortious act in this state caused by an act or omission outside this state" while "regularly do[ing] or solicit[ing] business, or engag[ing] in any other persistent course of conduct, or deriv[ing] substantial revenue from goods used or consumed or services rendered in this state." O.C.G.A. §§ 9-10-91(1), (3).

plaintiffs in Georgia. Id. The Georgia Court of Appeals found that the New York defendant had transacted business in Georgia, because the New York defendant and the Alabama company "had a longstanding business relationship" to make parts for use in engines across America. Id. at 190. Thus, "although [the New York defendant] did not conduct any sales activities in Georgia itself, its business ha[d] been directly affected by sales transactions occurring here," and so Georgia courts had long-arm jurisdiction. Id. (citation and internal quotation marks omitted). Zone Electric is in a similar position. It has a longstanding business relationship with Drive Electric to manufacture products to be sold throughout America, and "its business has been directly affected by sales transactions" in Georgia. See Dkt. Nos. 70-16 (boasting of seven Drive Electric NEV sales in Georgia, beyond the one to the Byrds); 70-17 (describing Drive Electric as a Zone Electric authorized dealer).

Also instructive is Showa Denko K.K. v. Pangle, 414 S.E.2d 658 (Ga. Ct. App. 1991). There, the Japanese defendant manufactured raw materials that non-Georgia entities used to make food supplements. Id. at 659. The defendant sold the materials to "twenty-three [manufacturers] in nine states." Id. at 660. Some of those ran nationwide retail chains. Id. "As a result, [materials] produced by [the defendant were]

placed in the stream of commerce in virtually all 50 states." Id. The Georgia Court of Appeals held that the defendant's "sale of goods in another state, knowing that they [would] be resold" in Georgia, triggered long-arm jurisdiction. Id. Zone Electric even more neatly fits under this rule than did the Showa Denko K.K. defendant—it made NEVs to order, including for the Byrds in Georgia. See Dkt. Nos. 70-2, 70-3. Thus, Georgia's long-arm statute reaches it.

### iii. The Court has long-arm jurisdiction over Western/Lido.

Long-arm jurisdiction over Western/Lido exists for the same reasons. Western/Lido supposedly assemble and inspect the NEVs that Drive Electric sells. Dkt. No. 70 at 16-17. This means that they, too, have a longstanding business relationship with Drive Electric to put NEVs onto streets nationwide, knowingly send NEVs into the nationwide stream of commerce, and are directly affected by sales in Georgia. Long-arm jurisdiction thus exists over Western/Lido.

### B. Personal Jurisdiction Satisfies the U.S. Constitution.

Personal jurisdiction over Drive Electric, Zone Electric, and Western/Lido is also compatible with federal due process. The U.S. Constitution limits personal jurisdiction for historical and philosophical reasons. "Historically the jurisdiction of courts to render judgment in personam is

grounded on their de facto power over the defendant's person." Int'l Shoe Co. v. State of Wash., Office of Unemp't Compensation & Placement, 326 U.S. 310, 316 (1945). Philosophically, the defendant has a right to "adequate notice of the suit." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980). Thus, when the defendant is not a resident, a court cannot exercise personal jurisdiction unless the defendant has "minimal contacts" with the forum state. Hanson v. Denckla, 357 U.S. 235, 251 (1958). The Court asks:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1355 (11th Cir. 2013) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985)).

The first and third elements are clearly met here. The Byrds' claims all relate to an NEV Defendants made, assembled, inspected, shipped, and sold for use in Georgia. And the third element is presumed to be satisfied once the plaintiff makes out a prima facie case, unless the defendant rebuts it "compelling[ly]." Louis Vuitton Malletier, S.A., 736 F.3d at

1355 (citation omitted). Here, the defaulting Defendants have obviously failed to do any such thing.

Purposeful availment is a closer call. How to apply that element in the context of modern commerce is hotly debated. See J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873 (2011) (4-2-3 split decision); Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty., 480 U.S. 102 (1987) (4-4-3 split decision). But precedent does easily establish that Drive Electric and Zone Electric purposefully availed themselves of Georgia. As to Western/Lido, the Court reaches the same destination, albeit by a more winding path.

### i. Drive Electric purposefully availed itself.

Drive Electric purposefully availed itself of Georgia. "[J]urisdiction is usually proper" in a state to which the defendant sells things online. Catch Curve, Inc. v. Integrated Glob. Concepts, Inc., No. 1:06-CV-2199, 2007 WL 9612268, at *5 (N.D. Ga. Sept. 20, 2007) (citing Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). The defendant only needs to have conducted multiple such sales. Sarvint Techs., Inc. v. Omsignal, Inc., 161 F. Supp. 3d 1250, 1262-63 (N.D. Ga. 2015) (finding personal jurisdiction where only 0.5% of defendant's sales and 0.35% of its total revenue came from Georgia). Drive Electric boasts of selling multiple NEVs to Georgians on its website. See

Dkt. No. 70-16. The Court can exercise personal jurisdiction over it.

### ii. Zone Electric purposefully availed itself.

Zone Electric also purposefully availed itself of Georgia. A manufacturer does so when it "specifically [sells] its products to [another] for distribution in" the forum state, especially when that distributor is "clearly not . . . an end-user." King v. Gen. Mot. Corp., No. 5:11-CV-2269, 2012 WL 1340066, at *7 (N.D. Ala. Apr. 18, 2012). Similarly, a manufacturer purposefully avails itself of a state if it makes products to order for a third party knowing they will be sold there. Brown v. Bottling Grp., LLC, 159 F. Supp. 3d 1308, 1313, 1315 (M.D. Fla. 2016). Here, Zone Electric made NEVs to order for Drive Electric. Dkt. Nos. 70-2, 70-3, 70-4. This is enough for constitutional personal jurisdiction.

### iii. Western/Lido purposefully availed themselves.

Western/Lido's purposeful availment is a harder question, as it relies on a theory that has repeatedly fractured the U.S. Supreme Court: the stream of commerce. Despite the debate, the precedents show that this Court can exercise personal jurisdiction over Western/Lido.

The Byrds point to Western/Lido's deriving substantial revenue from inspecting and assembling NEVs sold in Georgia, and their "deliver[ing] [NEVs] into the stream of commerce

AO 72A
(Rev. 8/82)

with the expectation that they [would] be purchased by consumers in the State of Georgia." Dkt. No. 70 at 16-17. This take on purposeful availment has a highly contested history. The earliest binding precedent on point holds that a court can constitutionally "assert[ ] personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980). Under this holding, Western/Lido purposefully availed themselves of Georgia: They inspected and assembled NEVs made-to-order for Georgia customers on a fairly regular basis. See Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc., 207 F.3d 1351, 1357 (11th Cir. 2000); Smith v. Poly Expert, Inc., 186 F. Supp. 3d 1297, 1305 (N.D. Fla. 2016) ("[A]t least five members of the current Supreme Court would probably find minimum contacts where a high-volume seller put its products into the stream of commerce knowing those products would end up in the forum state, even if that seller had no other contacts with the forum state." (footnote and emphasis omitted) (in obiter dicta)); Johnson v. Chrysler Can., Inc., 24 F. Supp. 3d 1118, 1139 (N.D. Ala. 2014) (applying "a broad stream of commerce approach," even while noting that "the parameters of the so-called 'test' from World-Wide Volkswagen have never been

AO 72A
(Rev. 8/82)

clear."); <u>Hatton v. Chrysler Can., Inc.</u>, 937 F. Supp. 2d 1356, 1365-66 (M.D. Fla. 2013) (same); <u>Simmons v. Big No. 1 Mot. Sports, Inc.</u>, 908 F. Supp. 2d 1224, 1229 (N.D. Ala. 2012) (same); <u>Pitts ex rel. Pitts v. Seneca Sports, Inc.</u>, 321 F. Supp. 2d 1353, 1357 (S.D. Ga. 2004) ("[The defendant] distributed its [products] nationally and thus is chargeable with knowledge that some would ultimately be sold by Georgia . . . stores. That supports the Court's personal jurisdiction over [it]." (internal citation omitted)); <u>but</u> <u>see</u> <u>Askue v. Aurora Corp. of Am.</u>, No. 1:10-CV-0948, 2012 WL 843939, at *6 (N.D. Ga. Mar. 12, 2012) (Carnes, J.) (noting confusion as to what test Eleventh Circuit would apply).

The rub is that the stream-of-commerce theory has long been debated, including in two fragmented U.S. Supreme Court decisions. In <u>Asahi Metal Industry Co. v. Superior Court of California, Solano County</u>, 480 U.S. 102, 112 (1987) (op. of O'Connor, J.), four justices would have held that "[t]he placement of a product into the stream of commerce, without more" is not purposeful availment. Four would have held that it can be, if the products' washing ashore in the forum state is "regular and anticipated," not "unpredictable." <u>Id.</u> at 117 (op. of Brennan, J.). Another, concurring, would have avoided the question altogether, finding that <u>World-Wide Volkswagen Co.</u> dictated the outcome by itself. <u>Id.</u> at 121-22 (Stevens,

J., concurring). "[A]ssuming that the test [had] to be formulated," he would have weighed "the volume, the value, and the hazardous character" of the goods. Id. For instance, he "would [have] be[en] inclined to conclude that a regular course of dealing that results in deliveries of over 100,000 units annually over a period of several years would constitute 'purposeful availment' even though the item delivered to the forum State was a standard product marketed throughout the world." Id. Asahi Metal Industry Co. thus left the law of personal jurisdiction "unsettled." Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1548 (11th Cir. 1993).[4]

But there are two ways to distill a binding holding from Asahi Metal Industry Co., both of which support personal jurisdiction over Western/Lido here. One is to take Justice Stevens' opinion as controlling because it is the narrowest concurrence—after all, he would have sidestepped the question that split the Court. Marks v. United States, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments

---

[4] The Court thinks this characterization, plus J. McIntyre Machinery, Ltd., means the Eleventh Circuit does not consider Justice O'Connor's Asahi Metal Industry Co. opinion binding. But see Morris v. SSE, Inc., 843 F.2d 489, 493 n.5 (11th Cir. 1988) (relying on that opinion "[f]or the limited purpose of resolving this case").

AO 72A
(Rev. 8/82)

on the narrowest grounds . . . ." (quotation marks and citation omitted)). Looking solely at Justice Stevens' opinion, World-Wide Volkswagen Co. goes undisturbed. Asahi Metal Indus. Co., 480 U.S. at 121-22 (stating World-Wide Volkswagen Co. "requires reversal," so no need to go further); cf. AFTG-TG, LLC v. Nuvoton Tech. Corp., 689 F.3d 1358, 1363 (Fed. Cir. 2012) (per curiam) (holding, in similar case, that "the law remains the same" because "the crux of [the narrowest] concurrence was that the Supreme Court's framework applying the stream-of-commerce theory . . . had not changed"). Under this reading, jurisdiction over Western/Lido here is permissible under Asahi Metal Industry Co. because World-Wide Volkswagen Co. permits it.

Another reading of Asahi Metal Industry Co. would be to treat Justice Stevens' test as binding because it garnered a combined majority,[5] as Justice Brennan's test would necessarily be satisfied in any case where Justice Stevens' is,[6] and the two together netted five votes. Thus, jurisdiction would be determined by weighing "the volume, the value, and the hazardous character" of the products sent to the forum state. Id. at 122. Doing so would show

[5] See Rapanos v. United States, 547 U.S. 715, 810 (2006) (Stevens, J., dissenting) ("Given that all four Justices who have joined this opinion would uphold the Corps' jurisdiction . . . in all . . . cases in which either the plurality's or Justice KENNEDY's test is satisfied[,] on remand each of the judgments should be reinstated if either . . . is met.").
[6] Justices White and Blackmun apparently thought so—they joined both opinions. See id. at 116, 121.

jurisdiction to be proper here. See Dkt. No. 1 ¶ 26 (alleging—and so eliciting constructive admission—that NEVs could start electrical fires); Dkt. No. 70-1 (showing $7,629.53 as cost of Byrds' NEV); Dkt. No. 70-16 (boasting of Georgia sales on website). Therefore, either reading of Asahi Metal Industry Co. allows for jurisdiction here.

So does the U.S. Supreme Court's most recent tussle over the stream-of-commerce test, J. McIntyre Machinery, Ltd. v. Nicastro, 564 U.S. 873 (2011). Once again, no majority was reached. Four justices would have held that the defendant must "have targeted the forum." Id. at 882 (op. of Kennedy, J.). Three would have held that a foreigner that engages in nationwide marketing purposefully avails itself of every state where products go. Id. at 893 (op. of Ginsburg, J.). Two concurring justices would have narrowly resolved the dispute by "adhering to . . . precedents" foreclosing jurisdiction because the defendant only made "a single isolated sale" into the forum state. Id. at 888, 890 (op. of Breyer, J.); see also id. at 890 ("I would not go further.").

Justice Breyer's concurrence was the narrowest and it left prior precedent undisturbed. In re Chinese-Mfd. Drywall Prods. Liab. Litig., 753 F.3d 521, 541 (5th Cir. 2014); AFTG-TG, LLC, 689 F.3d at 1363; cf. Williams v. Romarm, SA, 756 F.3d 777, 784-85 (D.C. Cir. 2014). Thus, J. McIntyre

AO 72A
(Rev. 8/82)

Machinery, Ltd. does not change the analysis above.  Despite

debate over the stream-of-commerce test, jurisdiction is

proper as to Western/Lido, and to all Defendants.

## III. DEFENDANTS ARE LIABLE.

There is a basis for holding each Defendant liable.

### A. Drive Electric Is Liable.

Drive Electric is liable for failure to warn and under

Georgia's Fair Business Practices Act ("GFBPA"), but not under

Georgia's Uniform Deceptive Trade Practices Act ("GUDTPA").[7]

#### i. Drive Electric is liable for failure to warn.

There is a basis for finding Drive Electric liable for

failure to warn.  A chattel supplier like Drive Electric "is

subject to liability 'for physical harm'" when it

> (a) knows or should realize that the chattel is or
> is likely to be "dangerous for the use for which it
> is supplied," (b) has no reason to believe that the
> user of the chattel will realize its "dangerous
> condition," and (c) fails to exercise reasonable
> care to inform them of its "dangerous condition" or
> of the facts which make it likely to be so.

Fluidmaster, Inc. v. Severinsen, 520 S.E.2d 253, 255 (Ga. Ct.

App. 1999).  By defaulting, Drive Electric admitted every

---

[7] The Byrds also raise negligence and breach of implied warranty. Dkt. No.
1 ¶¶ 30-36.  Most of their negligence allegations, which are raised
against all defendants together, go to manufacture and design.  See id.
Drive Electric was just a retailer.  Dkt. No. 49 ¶¶ 2-3.  Thus, most of
the Byrds' negligence allegations against Drive Electric fit better into
their other claims.  The sole exception might be failure to inspect.  Dkt.
No. 1 ¶ 38.  The Court need not address this allegation, given its finding
of other reasons why Drive Electric is liable.
    Nor will the Court analyze the Byrds' breach of implied warranty
claim.  This claim is dubious, given that the Byrds' contract appears to
conspicuously waive that warranty.  Dkt. No. 49-2 ¶ 10.

element. It admitted that the Byrds suffered physical harm, as fire destroyed their SUV and spread to their home. Dkt. No. 1 ¶ 17; see also Johnson v. Ford Mot. Co., 637 S.E.2d 202, 207 (Ga. Ct. App. 2006), abrogated on other grounds by Campbell v. Altec Indus., Inc., 707 S.E.2d 48 (Ga. 2011) (deeming property damage "physical harm"). It admitted that it "knew or should have known" that "the NEV [could] cause dangerous electrical fires." Dkt. No. 1 ¶ 26. There is no reason to think the Byrds could have foreseen this risk. Lastly, Drive Electric admitted that it "failed to warn the public" of the risk. Id. ¶ 40. That is an adequate basis for finding Drive Electric liable for failure to warn.

### ii. Drive Electric is liable under GFBPA.

Drive Electric is also liable under GFBPA. The three elements of GFBPA are a GFBPA violation, causation, and injury. Tiismann v. Linda Martin Homes Corp., 637 S.E.2d 14, 17 (Ga. 2006). Here, the violations alleged—and constructively admitted—are that Drive Electric sold an NEV "that in order to operate, must be charged using electricity, yet . . . cannot be charged without the risk of an electrical fire," and misrepresented the qualities and quality of the Byrds' NEV. Dkt. No. 1 ¶¶ 49–50; see also O.C.G.A. §§ 10-1-393(a), (b)(5), (b)(7), (b)(9). Causation and injury are self-evident. GFBPA makes Drive Electric liable.

AO 72A
(Rev. 8/82)

### iii. Drive Electric is not liable under GUDTPA.

However, Drive Electric cannot yet be held liable under GUDTPA. The Byrds seek to enjoin Drive Electric's "failing to disclose and concealing the NEV[']s defect." Dkt. No. 1 ¶¶ 58, 60; Dkt. No. 49 ¶¶ 59, 61. This pleading is "incomplete," as it does not specify what the Byrds want enjoined. Drew v. DeKalb County, 235 S.E.2d 528, 529 (Ga. 1977). The Court will entertain a renewed motion within ten days of today's Order.[8]

### B. Zone Electric Is Liable.

Zone Electric is liable for failure to warn and under GFBPA, and not liable under GUDTPA, for the same reasons as Drive Electric. It is also liable for negligence. The elements of negligence in Georgia are:

> (1) [a] legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.

---

[8] As "injunctive relief is the only remedy permitted by the [G]UDTPA," the Court cannot yet award attorneys' fees on this claim. O.C.G.A. § 10-1-373(b) (limiting attorneys' fees under GUDTPA to "prevailing party"); Catrett v. Landmark Dodge, Inc., 560 S.E.2d 101, 106 (Ga. Ct. App. 2002); Dkt. No. 70 at 21 (seeking attorneys' fees under GUDTPA). Nor do the attorneys' affidavits, dkt. nos. 71-74, provide adequate detail regarding the time spent on various aspects of this case to support an award.

Likewise, the Byrds' documentation of the costs they seek under GUDTPA is too summary. See Dkt. No. 52-4; Reis v. Thierry's, Inc., No. 08-20992-CIV, 2010 WL 1249076, at *3 (S.D. Fla. Mar. 25, 2010) (requiring "sufficient detail and documentation" to allow "meaningful review by the Court.").

Fletcher v. Water Applications Distrib. Grp., Inc., 773 S.E.2d 859, 862-63 (Ga. Ct. App. 2015) (citing Bradley Ctr., Inc. v. Wessner, 296 S.E.2d 693, 695 (Ga. 1982) (citation omitted)). A manufacturer like Zone Electric has a duty "to exercise reasonable care in manufacturing its products so as to make products that are reasonably safe for intended or foreseeable uses." Chrysler Corp. v. Batten, 450 S.E.2d 208, 211 (Ga. 1994). Zone Electric constructively admitted that the other three elements are met, so it is liable. Dkt. No. 1 ¶¶ 32-36.

### C. Western/Lido Are Liable.

Western/Lido can be held liable for failure to warn and under GFBPA, and not under GUDTPA, for the reasons above. As for negligence, an assembler's duty to avoid negligence is just a variety of a manufacturer's, and an inspector owes duties against negligence. Cf. Wilcher v. Redding Swainsboro Ford Lincoln Mercury, Inc., 743 S.E.2d 27, 30 (Ga. Ct. App. 2013) ("[W]here the retailer makes . . . an inspection, it incurs a duty to conduct such . . . non-negligently."). As was the case with Zone Electric, Western/Lido's default means they admitted the other negligence elements. Dkt. No. 1 ¶¶ 32-36. Western/Lido are liable.

### IV. THE BYRDS PROVED DAMAGES.

The Byrds adequately proved $219,801.52 in actual damages. Dkt. Nos. 52-2, 52-3, 66, 66-1, 66-2.

AO 72A
(Rev. 8/82)

They are also entitled to punitive damages. An award of punitive damages is authorized "in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). "Punitive damages are generally regarded as having three purposes: To punish the person doing the wrongful act, to discourage him from similar conduct in the future, and to discourage others from such conduct." Nat'l Gypsum Co. v. Wammock, 353 S.E.2d 809, 812 (Ga. 1987). Due process requires that any award of punitive damages take into account "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 418 (2003). In particular, "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." Id. at 425; cf. O.C.G.A. § 51-12-5.1(e) (placing no limit on award in products liability actions). Georgia law requires courts to also

AO 72A
(Rev. 8/82)

consider "the public nature of the harm" and "the corporate defendant . . . involved." Gen. Mot. Corp. v. Moseley, 447 S.E.2d 302, 312 (Ga. Ct. App. 1994), abrogated in part on other grounds by Webster v. Boyett, 496 S.E.2d 459 (Ga. 1998).

Taking into account these standards, and the evidence the Byrds presented of Defendants' slipshod manufacturing, assembly, and inspection of at least two NEVs, dkt. no. 67, a punitive award of four times the Byrds' actual damages is appropriate. This comes out to $879,206.08.

Therefore, Defendants are jointly and severally liable for a total of $1,099,007.60.

## CONCLUSION

The Byrds' Motion for Entry of Default Judgment (Dkt. No. 52) is **GRANTED**. Default judgment is entered jointly and severally against Defendants in the amount of **$1,099,007.60**. The Clerk of Court is **DIRECTED** to enter the appropriate judgment and mail a copy of this Order to Defendants Drive Electric, LLC; Drive Electric USA, LLC; Zone Electric Car USA, LLC; Western Golf Car Sales Co., Inc.; Western Golf Car Manufacturing, Inc.; and Lido Motors USA, Inc. The Byrds are **DIRECTED** to file any supplemental evidence and argument as to GUDTPA, fees, and costs within **10 days** of today's Order.

**SO ORDERED**, this 16th day of May, 2017.

_____
LISA GODBEY WOOD, DISTRICT JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA